**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PREMIER HEALTHCARE, INC., D/B/A NEWARK MANOR NURSING HOME, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-1263-BWD |
| | ) | |
| RENÉ LAMONT WATERS, RENEY MAXINE WATERS, and KIA WATERS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION TO DISMISS

WHEREAS:[1]

A. On April 16, 2024, plaintiff Premier Healthcare, Inc. ("Plaintiff") filed a First Amended Complaint in this action (the "Amended Complaint"). First Am. Compl. [hereinafter "Am. Compl."], Dkt. 19.

B. Plaintiff is a long-term nursing care facility in Newark, Delaware. Non-party James H. Bailey ("Decedent") was a resident of the facility from February through December 2023.

---

[1] The following facts are taken from the Amended Complaint and the documents incorporated by reference therein. *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

C.  On August 16, 2022, Decedent executed a deed transferring property at 514 Dougfield Road in Newark, Delaware (the "Property") to his son, René Lamont Waters, and granddaughter, Reney Maxine Waters, for one dollar.  Am. Compl., Ex. B.  The Amended Complaint alleges that Decedent made this transfer when he "was otherwise insolvent," "inten[ding] to default the rights of creditors."  Am. Compl. ¶ 6.  It does not allege any other facts concerning Decedent's assets or liabilities at the time of the transfer.

D.  Six months later, on February 14, 2023, Plaintiff, Decedent, and Decedent's daughter-in-law, Kia Waters, as "Resident Representative,"[2] executed a Resident Admission Agreement (the "Admission Agreement") under which Decedent would receive long-term care services at Newark Manor Nursing Home. *See* Am. Compl., Ex. C.  The Admission Agreement provides that the Resident Representative shall "[p]ay for all charges from the Resident's income or resources"; "[n]otify Newark Manor immediately and in writing if the Resident's resources are depleted"; "[i]f applicable, take all actions necessary to secure Medicaid coverage on the Resident's behalf in a timely and proper manner"; and "[n]ot misappropriate the Resident's income or resources, or use the Resident's income or resources to benefit someone other than the Resident."  Am. Compl., Ex. C § 3.1.  The Admission

---

[2] The Admission Agreement states that "Resident Representative has been designated by Resident or the court to make admission and/or financial decisions on behalf of Resident."

Agreement further provides that "Resident shall be responsible to pay the per diem rate . . . of Newark Manor for the Base Services" and "Resident shall also be responsible for the payment for Additional Services provided to Resident." *Id.* § 4.

E.  Decedent passed away on December 7, 2023. Am. Compl. ¶ 2. At that time, Decedent owed an outstanding balance of $94,730.00 due to Plaintiff. Am. Compl., Ex. A. The Amended Complaint does not allege any other facts concerning Decedent's assets or liabilities at the time of his death.

F.  The Amended Complaint asserts five counts. Count I alleges a claim for fraudulent transfer under 6 *Del. C.* § 1304 against René Lamont Waters and Reney Maxine Waters. Count II alleges a claim for unjust enrichment against all Defendants. Count III alleges a claim for breach of contract against Kia Waters. Counts IV and V allege claims for fraudulent misrepresentation and negligent misrepresentation against Kia Waters and René Lamont Waters.

G.  On April 26, 2024, Defendants moved to dismiss the Amended Complaint (the "Motion to Dismiss").[3] Dkt. 21. This action was reassigned to me on August 1, 2024. Dkt. 29. The Court heard oral argument on October 3, 2024.

---

[3] On May 24, 2024, Defendants filed an opening brief in support of the Motion to Dismiss. Defs.' Op. Br. In Supp. Of Mot. Of Defs. René Lamont Waters, Reney Maxine Waters, And Kia Waters To Dismiss Pl.'s First Am. Compl. [hereinafter "OB"], Dkt. 24. On June 21, 2024, Plaintiff filed an answering brief in opposition to the Motion to Dismiss. Pl.'s Ans. Br. In Opp'n Of Mot. Of Defs. René Lamont Waters, Reney Maxine Waters, And Kia Waters To Dismiss Pl.'s First Am. Compl. [hereinafter "AB"], Dkt. 26. On July 12, 2024,

NOW, THEREFORE, IT IS HEREBY ORDERED, this 4th day of October 2024, as follows:

1.      Defendants have moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim.  When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).  "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id.* at 537.

2.      Count I of the Amended Complaint alleges a claim for fraudulent transfer under Title 6, Section 1304(a) of the Delaware Code, which states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> >
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

Defendants filed a reply brief in further support of the Motion to Dismiss.  Defs.' Reply Br. In Supp. Of Mot. Of Defs. René Lamont Waters, Reney Maxine Waters, And Kia Waters To Dismiss Pl.'s First Am. Compl. [hereinafter "RB"], Dkt. 27.

4

a. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

b. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

6 *Del. C.* § 1304(a).

3. Defendants seek dismissal of Count I because "Delaware law recognizes more than one type of fraudulent transfer claim" and "Plaintiff failed to identify the precise fraudulent transfer claim it intends to pursue . . . ." OB at 12. That argument fails because Plaintiff may plead actual and constructive transfer theories in the alternative. *See, e.g.*, *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *9-13 (Del. Ch. Sept. 5, 2023) (declining to dismiss a fraudulent transfer count where the complaint advanced both actual and constructive fraudulent transfer theories). Still, "a right to plead alternative theories does not obviate the obligation to provide factual support for each theory." *Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *21 (Del. Super. Apr. 24, 2018).

4. To plead a claim for actual fraudulent transfer under Section 1304(a)(1), "a plaintiff must meet the particularity standard of Rule 9(b) by pleading 'specific supporting facts describing the circumstances of the transfer,' such as the

who, what, and when of the challenged transfer." *Cleveland-Cliffs Burns Harbor LLC*, 2023 WL 5688392, at *10. Intent may be averred generally, but the complaint nevertheless must "plead facts showing intent to defraud with specific supporting facts describing the circumstances of the transfer." *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1245 (Del. Ch. 2019); *see also* 6 *Del. C.* § 1304(b) (providing a non-exhaustive list of factors to consider "[i]n determining actual intent under paragraph (a)(1)").

5. The Amended Complaint fails to state a claim under Section 1304(a)(1) because it does not allege specific supporting facts describing the circumstances of the transfer from which the Court can infer an actual intent to hinder, delay, or defraud any creditor. While the Amended Complaint alleges that the Property was transferred to family members for nominal value in August 2022, it does not allege, other than in conclusory fashion, that Decedent was insolvent at the time of that transfer, nor does it allege that at the time the Property was transferred, Decedent was ill, in need of nursing assistance, or expected (or should have expected) to incur expenses or liabilities for any other reason.[4]

---

[4] The Amended Complaint alleges that the transfer was made "with intent to default the rights of creditors." Am. Compl. ¶ 6. But even on a motion to dismiss, the Court "need not 'accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party.'" *McMillan v. Nelson*, 2024 WL 3311812, at *7 (Del. Ch. July 5, 2024) (alteration in original) (quoting *Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018)).

6.      To plead a claim for constructive fraudulent transfer under Section 1304(a)(2), "a plaintiff must allege '(i) that the transferor failed to receive reasonably equivalent value for the asset transferred; and (ii) that the transferor was insolvent at the time of the transfer, or was rendered insolvent by the transfer.'" *Cleveland-Cliffs Burns Harbor LLC*, 2023 WL 5688392, at \*9 (quoting *In re Samson Res. Corp.*, 2023 WL 4003814, at \*24 (Bankr. D. Del. June 14, 2023)).  Plaintiff "is not required to plead these elements with particularity.  Rather, the claim is subject to the more lenient Rule 8(a) notice pleading standard." *Id.*

7.      The Amended Complaint fails to state a claim under Section 1304(a)(2) because it does not allege facts from which the Court can infer that at the time of the transfer, Decedent reasonably should have believed he would incur debts beyond his ability to pay as they became due—in other words, that he was, or expected to become, insolvent.  Despite conclusory allegations that "[a] substantial portion of [Decedent's] assets, funds, and income" was transferred and Decedent "was otherwise insolvent,"[5] Plaintiff pleads no *facts* supporting an inference that Decedent was insolvent.  Indeed, the Amended Complaint does not allege *any* facts about Decedent's assets or income.  *See BV Advisory P'rs, LLC v. Quantum Computing Inc.*, 2024 WL 2723119, at \*20 (Del. Ch. May 28, 2024) (dismissing claim under

---

[5] Am. Compl. ¶ 5.

Section 1304(a)(2) where "Plaintiff ha[d] not adequately alleged that [the transferor's] liabilities [we]re in excess of a reasonable market value of its assets"). And again, the Amended Complaint does not plead facts supporting an inference that at the time of the transfer, Decedent knew he would need care that his other assets and Medicare or Medicaid would not cover. Count I therefore fails to state a claim for actual or constructive fraudulent transfer and should be dismissed.

8. Count V of the Amended Complaint alleges a claim for negligent misrepresentation. "A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except 'that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly.'" *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015). "[A]n equitable fraud or negligent misrepresentation claim lies only if there is either: (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford." *Id*.

9. The Amended Complaint does not allege a special relationship between Plaintiff and Defendants; "[t]o the contrary, the gravamen of the present dispute arises from a transaction that ostensibly was the product of arms-length negotiation . . . ." *Id.* Nor does the Amended Complaint seek an equitable remedy in connection with Count V. *See* Am. Compl. ¶ 34 ("As a direct and proximate result of the

8

negligent misrepresentations of Defendants Kia Waters and René Lamont Waters, Newark Manor has suffered, and will continue to suffer, compensatory damages, consequential damages, direct damages, punitive damages,[6] and attorney's fees."). Count V therefore fails to state a claim and should be dismissed.

10. Counts II, III, and IV—claims for unjust enrichment, breach of contract, and fraudulent misrepresentation, respectively—are legal claims for which Plaintiff seeks monetary damages. *See* Am. Compl. ¶ 14 ("Newark Manor is entitled to judgment against Defendants, René Lamont Waters, Reney Maxine Waters and Kia Waters in an amount determined to be the fair value for the residence and care of James H. Bailey, which is the amount due Plaintiff as set forth in Exhibit A hereto."); *id*. ¶ 18 ("Newark Manor is entitled to Judgement against Defendant Kia Waters in the amount of $94,730.00; plus pre-judgement interest at the rate of 18% per annum; attorney's fees; and the costs of this action."); *id*. ¶ 26 ("Newark Manor is entitled to compensatory damages, consequential damages, direct damages, punitive damages, the costs of this action, and attorney's fees."). Without an equitable hook on which to base jurisdiction, Counts II, III, and IV should be dismissed with leave to transfer to the Superior Court pursuant to 10 *Del. C.* § 1902.

---

[6] "The Court of Chancery does not award punitive damages." *Envo, Inc. v. Walters*, 2009 WL 5173807, at *18 (Del. Ch. Dec. 30, 2009).

11. Accordingly, the Motion to Dismiss is GRANTED with leave to transfer Counts II, III, and IV to the Superior Court.[7]

12. This order is a final report pursuant to Court of Chancery Rules 143 and 144.[8]

/s/ Bonnie W. David

Bonnie W. David
Magistrate in Chancery

---

[7] At oral argument, Plaintiff argued that if the Motion to Dismiss is granted, it should be permitted leave to amend the Amended Complaint. Under Court of Chancery Rule 15(a)(5)(A), however, "[i]f a party wishes to amend the party's complaint in response to a motion to dismiss under Rules 12(b)(6) or 23.1, the party must amend the party's complaint—or seek leave to amend . . . before the party's response to the motion is due . . . ." Ct. Ch. R. 15(a)(5)(A)(1). Plaintiff's request to amend is, therefore, denied.

[8] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").